**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 19, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ARTURO ESCOBAR-PONCE,

    Defendant-Appellant.

No. 05-2382
(D.C. No. CR-04-109)
(New Mexico)

---

**ORDER AND JUDGMENT**[*]

---

Before **McWILLIAMS**, Senior Circuit Judge, **BALDOCK**, Senior Circuit Judge, and **BRORBY**, Senior Circuit Judge.

---

By a criminal information filed on January 21, 2004, in the United States District Court for the District of New Mexico, Arturo Escobar-Ponce (the defendant), an alien, was charged with having been found on October 7, 2003, in Dona Ana County, in the State of New Mexico, after having been convicted of an aggravated felony as described in 8 U.S.C. § 1101(a)(43), which was Attempted Voluntary Manslaughter, and having been deported and departed from the United States on or about April 14, 2003, in violation of 8 U.S.C. §1326(a)(1) and (2), and 8 U.S.C. § 1326 (b)(2). The defendant, personally and

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

through his court appointed attorney, waived prosecution by indictment and consented to proceedings before a United States Magistrate Judge. On January 21, 2004, before the Magistrate Judge, the defendant pled guilty to the crime charged in the information, the defendant, at the time, being represented by appointed counsel. A presentence investigation was then ordered.

The Pre-Sentence Report (PSR) fixed defendant's base offense level at 8 levels. The PSR then recommended that the base offense level be raised by 16 levels pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) which provides that, if a person found in the United States after he had been previously deported after a conviction for a felony that was a crime of violence, his base offense level should be raised by 16 levels. In support of this recommendation, the PSR stated that on February 10, 1992, the defendant had been convicted for Assault with a Firearm and Attempted Murder in the Los Angeles, California, Superior Court and sentenced to 18.6 years imprisonment. Accordingly, defendant's base offense level was raised from 8 to 24 levels. After lowering defendant's adjusted offense level by 3 levels for acceptance of responsibility, the PSR set defendant's total offense level at 21.

The PSR set defendant's criminal history category at VI, based on, inter alia, (1) a conviction in 1987 for burglary of a habitation and robbery, (2) a conviction in 1992 in the Los Angeles California Superior Court for Assault with a Firearm and Attempted Murder, (3) a conviction in 1992 for possession of a controlled substance, and (4) a conviction in 2002 for attempted theft of an automobile. With a total offense level of 21

and a criminal history category of VI, the guideline range was imprisonment for 77 to 96 months.

On June 4, 2004, counsel who had prior thereto represented defendant was permitted to withdraw from the case and new counsel was thereafter appointed to represent the defendant, who thereafter continued to represent defendant in the district court and was later appointed by this court to represent defendant in this court.

In response to the PSR, counsel filed for the defendant an objection to the PSR and also filed a motion for downward departure. Specifically, the defendant objected to the 16 level increase of his base offense level, relying on the then recently announced *Blakely v. Washington,* 542 U.S. 286 (2004). The defendant's Motion for Downward Departure was based on family circumstances, and the like.

The case was initially set for sentencing on October 5, 2004. On that date the district court continued the sentencing pending the resolution of *United States v. Booker* which was then pending before the Supreme Court. *United States v. Booker* was decided on January 12, 2005, and now appears as *United States v. Booker,* 543 U.S. 220 (2005). The present case then came on for sentencing on October 5, 2005. By that time the defendant had filed another objection to the PSR, claiming that in the calculation of his criminal history category he should not have been assigned 3 criminal history points for his 1987 burglary conviction because no interpreter was present at his change of plea proceeding.

At the sentencing hearing on October 5, 2005, the district court, relying on *United*

*States v. Booker,* denied defendant's objection to the enhancement of his offense level by 16 levels based on his February 10, 1992 conviction, but granted his request that in determining defendant's criminal history category his 1987 burglary conviction should not be included because no court interpreter was present at his arraignment. All of this resulted in a criminal history category of V, instead of VI, and with an adjusted offense level of 21, the guideline range was 70 to 87 months imprisonment.  The district court then sentenced defendant to imprisonment for 70 months.

On May 15, 2006, appointed counsel filed in this court defendant's opening brief. In that brief, counsel, after reviewing the facts and the applicable law, concluded that the present appeal is "wholly frivolous and should be dismissed," and that he should be allowed to withdraw from the case. *Anders v. California*, 386 U.S. 738 (1967).  In response to counsel's *Anders* brief, the United States Attorney's Office later filed a Notice of Intent Not to File a Response.

Counsel had served a copy of his *Anders* brief on the defendant and in connection therewith asked that the defendant "be allowed to further explain his position to the court should he so desire."  On July 18, 2006, the defendant filed in this court two separate responses.  The first one was labeled as "Objections" and stated his reasons why we "should not affirm or dismiss my appeal."  In that particular response, the defendant claimed "ineffective assistance of counsel" and cited instances of his perceived derelictions by his appointed counsel.  In his second response, the defendant complained about his most recent  deportation occurring on April 14, 2003, which was a predicate for

the present action against him, i.e., returning to the United States after having been deported.

Pursuant to our reading of *Anders, supra,* in *United States v. Snitz*, 342 F.3d 1154, 1157 (10th Cir. 2003), we spoke as follows:

> The basic principle underlying the cited cases is that, aside from when an appellant elects to proceed *pro se*, every direct criminal appeal must be briefed on the merits by counsel and decided accordingly by the court unless, after a thorough review of all pertinent proceedings, the appeal is determined initially by counsel and then independently by the court to be wholly frivolous. *See generally Smith v. Robbins,* 528 U.S. 259, 279-80 (discussing and applying Court's present understanding of its 'chief cases in this area,' including *Anders, Penson,* and *McCoy.*

In that same case, at 1158, citing *McCoy v. Court of Appeals of Wisc. Dist. 1*, 486 U.S. 429, 438-39 (1988), we then spoke as follows:

> As for the professional responsibilities of counsel,
> the appellate lawyer must master the trial record, thoroughly research the law, and exercise judgment in identifying the arguments that may be advanced on appeal . . . . Only after such an evaluation has led counsel to the conclusion that the appeal is 'wholly frivolous' is counsel justified in making a motion to withdraw.  This is the central teaching of *Anders. McCoy,* 486 U.S. at 438-39.

And finally, in *Snitz at 1158*, we then spoke as follows:

> The court's obligation does not end once it concludes that counsel reviewed the record and found no error.  Because it is 'the court–not counsel' that ultimately 'decides whether the case is wholly frivolous,' *Anders,* 386 U.S. at 744*,* counsel's assessment triggers the final responsibility of the court, which must 'itself conduct a full examination of all the proceeding[s] to decide whether the case is wholly frivolous.' *Penson*, 488 U.S. at 80 (quoting *Anders*, 386 U.S. at 744).

We conclude that in the instant case, counsel for the defendant has followed the

teaching of *Snitz*.  Discharging our responsibility under *Snitz*, based on the record before us, and after a full examination of the record and consideration of both the defendant's *pro se* response brief and the *Anders* brief filed by counsel, we conclude that there are no non-frivolous issues upon which the defendant has a basis for appeal.  *United States v. Calderon*, 428 F.3d 928, 930 (10th Cir. 2005).

Defendant in his *pro se* response to counsel's *Anders* brief suggests "ineffectiveness" of trial counsel, a matter which of course cannot be raised on direct appeal.  *United States v. Galloway,* 56 F.3d 1239, 1240 (10th Cir. 1995).  Defendant in his *pro se* response also suggests that the validity of his deportation on April 14, 2003 was questionable.  In this regard, the defendant pled guilty to the information which alleged, *inter alia,* that the defendant was found in New Mexico after having been lawfully deported from the United States on or about April 14, 2003.  The trial record does not indicate that the defendant sought to withdraw his guilty plea and, such being the case, he cannot at this time challenge the lawfulness of his deportation on April 14, 2003.

Appeal dismissed and counsel's motion to withdraw is granted.

.